Watts.
7 w 367.
135 373

## Kerr *against* Chess.

*Quære?* Whether a verdict and judgment on a traverse of *liberum tenementum* is conclusive of the title in ejectment.

A verdict and judgment for the defendant in an action of trespass upon the general issue and traverse of *liberum tenementum* is not conclusive of the title in ejectment.

ERROR to the district court of *Allegheny* county.

David Chess against James Kerr. Ejectment for thirty acres of land. The only question argued in this case arose out of the evidence given by the defendant of the record of an action of trespass between the same parties, in which a verdict and judgment were rendered for the plaintiff upon the plea of *liberum tenementum* and replication thereto as follows:

" And the said David Chess, protesting that the said place in which the breaking, entering, cutting down of timber, carrying away of rails, &c., in the said plaintiff's declaration said to be carried away, being the supposed trespass aforesaid, at the time aforesaid, where the said supposed trespass is said to have been committed, was not the soil and freehold of the said plaintiff, for plea, as before, says that the place in which the said supposed trespass was committed was the soil and freehold of the defendant, in manner and form as the said defendant in his said plea hath alleged; and of this he puts himself on the country."

Replication to said plea as follows:

" Plaintiff, in reply to the defendant's plea of *liberum tenementum*, says, that the said defendant is not the owner of the freehold of the premises to and upon which said plaintiff complains that the trespass was committed, to wit, a certain tract of land situate in Ross township aforesaid, adjoining lands formerly of James Lamden, now of Arthur Gallagher, lands of the heirs of M'Kean and lands of David Chess, containing twenty-two acres, more or less, being the same piece of land which was bargained and sold by Jacob Fink and Sarah Fink to the plaintiff, by articles dated the 28th of September 1813, recorded in book S, 462, but that the freehold of said premises is in said plaintiff. And for a further replication to defendant's plea, the plaintiff says that he, said plaintiff, is, and was at the time of the trespass in his declaration mentioned, in the lawful possession of the premises to and upon which said trespass was committed, to wit, the premises above described."

The defendant requested the court to charge the jury that this verdict and judgment were a conclusive bar to the plaintiff's recovery in the present action of ejectment.

[Kerr v. Chess.]

Grier, President.—This point has never been *directly* decided in Pennsylvania nor any where else (as the court is informed), and is certainly one of very great importance. That it has never been raised before and solemnly decided, is also a strong presumption against it. It has nevertheless been argued with ability and plausibility by the learned counsel for the defendant, and will deserve a much more careful consideration and investigation than it is in the power of this court under present circumstances to give it.

I have no doubt of the correctness of the doctrine advanced by lord Ellenborough, in Olttram *v.* Morewood, *3 East* 356, that, "what lord Coke says"—that in *personal* actions concerning debts, goods and *effects* (by way of *distinction* from other actions) a recovery in one action is a bar to another—is not true of personal actions *alone,* but is equally and universally true as to *all* actions whatsoever *quoad* their subject matter. And that an allegation on record upon which issue has been once taken and found is, between the parties taking it and their privies, conclusive according to the finding thereof, so as to stop the parties respectively from again litigating that fact once tried and found.

If therefore this were an action of trespass in which the plea of *liberum tenementum* were again set up for the same land after having been once decided on the same plea between those parties, and the former verdict had been *pleaded as an estoppel* as in the case first cited, I should have no difficulty in so deciding it on the authority and reasons contained in the case just mentioned in connection with the decision of our own supreme court in Kethffro *v.* Hau, 17 *Serg. & Rawle* 319.

If then the doctrine (not unfrequently advanced by courts), that " a judgment in a possessory action is not conclusive on real rights," be abandoned, it may well be asked, why a party who has once put in issue his freehold, and had it decided against him in an action of trespass, should not be estopped from again litigating that fact in an action of *ejectment,* which is a possessory action of no higher order than a common action of trespass?

It is sometimes easier to ask questions than to answer them. And if it were a sufficient answer to one question to ask another, one might reply by asking, if a verdict and judgment between the parties after a solemn trial of title in ejectment is not conclusive, why should it be, if the same thing is done in an action of trespass? The history of the action of ejectment may furnish an answer to both of these questions. Originally the owner of the freehold, if he had a right of entry, recovered possession by his writ of entry or assize, which were *real* actions though called possessory, in opposition to writs of right, which were founded on the right of property alone.

In the possessory action a judgment was a conclusive bar to another action of the same nature. Hence, one who had lost his possession by a judgment in a possessory action has no remedy but a

[Kerr v. Chess.

writ of right to which the former judgment could not be pleaded as a bar.

But the action of ejectment was devised for a lessee of a term of years who was ousted of his term ; and who having but a chattel interest could not support a real action to recover possession. It was but an action of trespass in effect, and the remedy was in damages only for the dispossession. But afterward the court determined the lessee should not only recover damages, but also *his term,* which soon brought the action into general use. And by the formal scaffolding of a lease, entry and ouster, the action was converted into a method of trying collaterally and incidentally the title of the lessor.

Hence, as the title of the freehold was never *formally* and *directly* in issue by the pleadings, but only a ,trespass committed by John Doe upon Richard Roe, in forcibly expelling him from his term of years, no verdict between these parties for this supposed trespass could be pleaded in bar for another action of trespass committed by Thomas Troublesome on Timothy Peaceable. Much less could the issue of *liberum tenementum* passed upon in an action of trespass between the landlords of these fictitious personages, be pleaded in bar as an estoppel to their lessee's rights. No book of reports shows an instance when it was attempted ; nor system of pleading sets forth how it could be done. It was in this way that the doctrine crept in, that a verdict and judgment were conclusive only as regards personalty, and not as regards the title to land. When therefore the act of assembly of 21st of March 1806 modified the action of ejectment by stripping it of its fiction and forms, and in fact and in truth converted it into a *real action,* between the *real parties* ; yet the courts have continued to apply the same doctrines to it which had their origin in its fictitious state. And although the issue is now tried directly on the titles of A. B. and C. D., they are allowed all the privileges as if the issue were joined with the lessee of plaintiff on trespass and fictitious expulsion. Hence it required an act of assembly (which passed the 13th of April 1807) to limit the number of verdicts and judgments in ejectments to two, in order to conclude a party. Why then shall a verdict on the plea of *lib. ten.* be received as a bar under the action in its new form, when it would not in its old form ? And if the rule of " *expressio unius est exclusio alterius*" is to have any weight, shall courts say *one verdict* in trespass shall forever settle the title, when the legislature, by declaring that two verdicts and judgments in ejectment shall be a bar, leaves the palpable inference that nothing else should. But is it true that the plea of *liberum tenementum* puts in issue the title to the property in all cases ? Or do the pleadings on the record given in evidence in this case show such an issue was made by the parties and passed upon by the jury ?

It is remarked by Willes, C. J., in Lamberts *v.* Strottan (*Willes's Rep.* 218 ; see also 7 *Bacon's Ab.* 712, *ed.* 1832), " these pleas of freehold in actions of trespass seem a little absurd ; and if they had not prevailed for so many years, I should be of opinion that they

were not good pleas; for every plea in bar (admitting the fact pleaded to be true) ought to be a full bar to the action; but this is plainly not so, for though the plea in question be the defendant's freehold, the plaintiff may have good cause of action—as if he held by lease under the defendant or under another person who conveyed the reversion to the defendant, or even though he has no right at all, if he has been in quiet possession a great while. The reason why this plea was introduced seems to be this. Anciently, most declarations in trespass were *general*, only breaking and entering the plaintiff's close in such a place, without giving any name to the close; but, by reason of a rule of court made in 1654, the plaintiffs in their declaration set forth the name of the close. But formerly, when the plaintiff declared only generally, it was a hardship on the defendant to be obliged to answer such a general charge; for if the plaintiff had a large estate in the township, the defendant could not tell in which of the closes he would assign the trespass: and therefore they gave the defendant leave to plead the general issue (common bar), to oblige the plaintiff to make a new assignment and ascertain the place in his replication; if he did not, and the defendant pleaded generally, as he might do, that the place in question was his freehold, the hardship would be turned on the plaintiff, for then, if the defendant could prove any one place in the township to be his freehold, the plaintiff would *be gone.* That this was the reason of these pleas originally, appears from the words of the rule above mentioned, which says, "for the future the declaration *may* state the place certainly, and so prevent the use and necessity of the common bar and new assignment." As these were the reasons for admitting such a plea as *liberum tenementum*, C. J. Willes doubts, or seems rather inclined to the opinion, that this plea is not a good plea where the plaintiff sets forth his close in his declaration; and the question has never been raised or decided since Willes's judgments. (See Cooper v. Crompton, 1 *Barn. & Cres.* 489.)

Now it appears from the record that the plaintiff's *narr.* in the action of trespass declared according to the ancient method, without naming his close or stating his boundaries, for the *narr.* states generally, "breaking and entering *five closes* in the township of Ross." To this the defendant pleaded (in a very informal ill-drawn plea), "that the place in which the said supposed trespass was committed was the soil and freehold of the defendant," &c. (concluding improperly to the country). To this plaintiff replies (in quite as informal a manner) by a new assignment, stating his close to be the same piece of land which was sold by Jacob Fink and wife to plaintiff, by certain articles of agreement; for further replication avers that plaintiff was in possession of the *locus in quo* at the time the trespass was committed. To this new assignment the record shows no plea at all, unless the general issue of not guilty be applied to it.

The plaintiff in this case claims certain lands patented to John Wilkins. The defendant claims an improvement made by Fink. In

[Kerr v. Chess.]

the issue tried in the trespass case (if issue it can be called when there was no issue) the question was never raised, whether the land now in dispute was included in the Wilkins survey or the Fink claim; nor do I see how it could be raised by any regular or admitted plea that could be devised.

For these reasons I am of opinion that the verdict and judgment in said action of trespass were no bar or estoppel in this case.

Error assigned.

In charging the jury that the prior recovery of the defendant in this case, in an action of trespass *quare clausum fregit* upon a plea of *liberum tenementum* and replication thereto, which put in issue the title to the identical ground for which this action was brought, in which the defendant was plaintiff and the plaintiff was defendant, was no bar to the plaintiff's recovery in this case.

*Metcalf*, for plaintiff in error, cited, 2 *Wh. Selw.* 1033; 3 *East* 346; 8 *Wend.* 1; 1 *Chit. Pl.* 339, 613; *Cro. Eliz.* 590.

*Findlay*, for defendant in error, cited, 1 *Saund.* 299, *b. note* 6; *Cro. Eliz.* 492; 15 *East* 235.

The opinion of the Court was delivered by

GIBSON, C. J.—It seems to be unsettled whether a verdict on a traverse of *liberum tenementum* is conclusive of the title in ejectment; and considerable doubt has been cast on it by *dicta* of the judges, in Gilpin *v.* Meredith, 9 *Price* 146; S. C., 2 *Eng. Exch. Rep.* 416. It will be sufficient to show that the point is not raised by the record at bar.

A novel assignment presupposes that two or more actual or ostensible trespasses have been committed; and it tacitly confesses the matter of the plea as to one of them. It is an abandonment of a trespass supposed to be justified; and the common bar, as *liberum tenementum* is sometimes called, having done its office, is heard of no more. The plaintiff avers, in reply, that he prosecutes for another, and a different trespass; and one which the defendant has not answered. 3 *Chitty's Plead.* 1216. A new assignment, therefore, being in the nature of a new declaration, or rather being the original declaration pared down to the statement of a specific trespass, must be newly answered. Perhaps *liberum tenementum* might be again pleaded to it, though it is not usually, if ever, done. It is an evasive plea whose aim is to drive the plaintiff, not to an issue on the title, but to a particular designation of the cause of action by adding to it the circumstance of place. It is certainly not a perfect answer to a previous allegation even of a specific trespass, as the plaintiff might notwithstanding recover on a right of possession derived from the defendant himself; yet it seems to be so far an answer in the first instance as to require the plaintiff to confess and avoid it by new matter, for if issue were taken on it and the defendant were to show

[Kerr v. Chess.]

that he has a freehold in the *ville*, he would be entitled to a verdict of course.   As a means to force the plaintiff into a particular statement of his complaint, it receives a measure of indulgence which would not be accorded to it as any thing else.   It is a practical violation of an elementary rule which forbids the substance of the general issue to be pleaded specially ; for it is no longer doubted that title may be given in evidence on not guilty, and it is for that reason perhaps that *liberum tenementum* is never pleaded to a novel assignment.   The defendant, having compelled the plaintiff to individuate the particular trespass, is let into a full defence on the general issue. Now though that happened in this case to be pleaded in the first instance, it was not, like the common bar, superseded by the new assignment ; and it was therefore unnecessary to repeat it.   It was a broad denial of every trespass, however alleged, and it continued to be a denial of the trespass on which the plaintiff ultimately rested. The defendant had a right to plead it to the cause of action indefinitely charged ; and it stood for an answer to the declaration narrowed to a particular point.   The parties, therefore, having gone to trial on the general issue, are not concluded in respect of the title.

Judgment affirmed.