## Bolinger, Appellant, v. Barnhardt.

*Trespass—Unlawful cutting of timber—Possession—Title—Parol —Partition—Evidence.*

Possession has by law a qualified property attached to it, which is valid until a better right can be shown; and one who is in actual possession of land may, therefore, maintain trespass quare clausum fregit against a mere intruder.

In an action of trespass quare clausum fregit for the unlawful

cutting of timber where the plaintiff introduces no specific evidence as to his actual possession, but relies on the constructive possession flowing from his paper title, it is not reversible error to instruct the jury that the plaintiff must recover, if at all, upon the strength of his title, and that he cannot defend on the weakness of the defendant's title.

In such a case where the location of a particular line on the ground depends largely upon the conflicting testimony of surveyors, the case must be submitted to the jury under appropriate instructions by the court; and if the plaintiff shows a good paper title and introduces evidence of the location on the ground of a particular line of the survey, the jury should be instructed that if they found the line on the ground to be as shown by plaintiff's evidence, the defendant was a trespasser in cutting the timber.

The mere permission to move a fence shows no unequivocal intention to establish a permanent boundary which should prevail whether it was the true boundary or not.

The principle that a judgment in trespass upon a traverse of the plea of liberum tenamentum estops the party against whom it had been rendered and his privy from afterwards controverting the title to the same freehold in a subsequent action of trespass, does not apply to a record consisting only of a declaration in trespass, a plea of not guilty, and a verdict for the defendant. From such a record no conclusive, or even prima facie presumption arises that the title was adjudicated.

A parol partition of land is not within the statute of frauds where it appears that the parol agreement was followed by acts of the parties on the land itself indicating several possessions taken in execution of the agreement.

The acceptance of a deed following a parol partition of land does not preclude the grantee or his successors in title in an action of trespass for cutting timber, from showing that the title to the land in question had vested in the grantee ten years before the acceptance of the deed.

Argued Oct. 27, 1915. Appeal, No. 294, Oct. T., 1915, by plaintiff, from judgment of C. P. Huntingdon Co., Sept. T., 1912, No. 7, on verdict for plaintiff in case of S. S. Bolinger v. Nathan Barnhardt. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Trespass quare clausum fregit for the unlawful cutting of timber. Before Woods, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the following offer was made:

By Mr. Woods: I offer Continuance Docket "M" No. 2, page 238, being the record of the suit of Samuel Bolinger against Abraham Bolinger brought June 23, 1880. I offer the record in evidence.

By Mr. Beers: What is the purpose?

By Mr. Woods: J. Murray 'Africa having testified on cross-examination that the land described in the disclaimer filed in this suit was the Samuel Bolinger one hundred and twelve acre tract, and the disclaimer showing it was for trespass upon that tract, I offer the record and all the pleadings in the case together with the declaration, and the verdict of the jury, the declaration being identified as Defendant's Exhibit No. 2, M. J. for the purpose of showing that this matter is res adjudicata, as far as this line is concerned.

By Mr. Beers: It is objected to. First. That this suit mentioned in the offer was a trespass suit brought by Samuel Bolinger against Abraham Bolinger, and in no way involved the title to land. It was for damages. Second. What the verdict was or the ruling cause of that case, the verdict being rendered for the defendant in the suit, whether a nonsuit or whatever it may have been, is wholly immaterial in this suit. An action of trespass does not settle title, and this suit could in no way bind the present plaintiff, who is simply a successor in title to Samuel Bolinger, the plaintiff in the former action.

By the Court: The objection is overruled. Evidence admitted. Bill of exceptions sealed plaintiff. (15)

S. D. Bolinger, a witness called by the plaintiff, was asked this question:

Q.—(By Mr. Beers) In 1871 was there a partition of this land between John C. Bolinger, your father, and Samuel Bolinger?

By Mr. Woods: We object.

By the Court: Where are the records.

By Mr. Beers: I propose to show by the witness on the stand, on July 27, 1871, John C. Bolinger and Samuel Bolinger owners of the James McMullen survey, had an amicable partition made of that tract of land, dividing it into some four parts, and two of these middle parts were given, in that partition, to John, C. Bolinger, and the northern end and southern end of the same tract to Samuel Bolinger and that after this partition, each party entered into possession of his particular part.

By Mr. Woods: It is objected to that if there was a partition of this land between these two parties, it must be evidenced in writing or it is within the statute of frauds, and therefore is not binding upon any one. Second. Title to land cannot be shown by proof of verbal or parole partition.

By Mr. Beers. This to be followed. First. By proof that the tracts were divided by a surveyor and a draft made of the respective tracts. To be followed by further testimony that in 1881 John C. Bolinger made a deed for the one hundred and twelve acre tract involved in this suit, and also the northern end, about one hundred and twenty acres of land of this part of the James McMullen survey, to Samuel Bolinger, and that Samuel Bolinger, at the same time made a conveyance of the two middle tracts to John C. Bolinger, the two middle parts of the James McMullen.

By Mr. Woods: It is objected to as utterly immaterial, irrelevant and inadmissible. The testimony already in evidence shows that this entire tract of land, became vested in John C. Bolinger and Samuel Bolinger, in 1863, and they now say, under this offer, they propose to show John C. Bolinger conveyed to Samuel Bolinger a part of this tract of land, which would give him legal title, without any amicable partition. Any evidence of an amicable partition is immaterial, irrelevant and inadmissible.

By the Court: Objection sustained. Evidence rejected. Bill of exceptions sealed for the plaintiff.

By Mr. Beers: I now offer by itself, Plaintiff's Exhibit No. 13, M. J. being draft of survey made July 27, 1871, by S. D. Caldwell, a surveyor of Huntingdon County, in running the lines of the James McMullen, and especially that part of the one hundred and twelve acres shown in red on the plaintiff's map, and containing the identical description and boundaries of the land described in suit, in plaintiff's statement, and in the deed for the one hundred and twenty acre tract, offered by the plaintiff in evidence. For the purpose of showing, like any other draft or survey, the description of the land in suit, and that the boundaries were recognized years ago, in 1871.

By Mr. Woods: It is objected to. There is no proof that S. D. Caldwell, the man who made, or is alleged to have made this survey, is dead. Second. That if he is alive, it is simply a declaration of a living witness, and therefore it is wholly immaterial and inadmissible, and is not the best evidence. The best evidence being the testimony of the man who made the draft, if he is in existence. There is no evidence that he is dead, and it is utterly immaterial and inadmissible for the purpose offered.

By the Court: As offered now, we reject the evidence. Bill of exceptions sealed for the plaintiff. (17)

The court charged in part as follows :

["In other words you must be satisfied by the preponderance of the evidence that this plaintiff, S. S. Bolinger, has title to the land, and not that the defendant Nathan Barnhardt has a weak title or anything of the kind, but you must decide from the evidence whether S. S. Bolinger has title to this land. It does not make any difference whether the title to the land is weak on the part of Nathan Barnhardt or not, the strength of the plaintiff's title must control you."]     (1)

["You are to take into consideration the testimony of Mr. Africa on the part of the plaintiff, and Mr. Evans on the part of the defendant. These gentlemen have testified

that they went on the lines and found marks, line trees which they designate, have been on there for a number of years, and I think Mr. Africa testified one place he blocked a tree or found a tree marked back to 1794 or 1795, the date of the original survey. If I mistake the evidence you will correct it. Mr. Evans testified he went on the ground and started about or near the same place. Both of these gentlemen testified they started at what they called the Weaver Corner."]    (2)

["But the defendant offers some testimony which shows there was a contention in 1881 or 1884 along there, and they show an agreement and this agreement is to the effect that the line has been established at a certain place and shows you a receipt for seventy-five dollars, and they say by reason of that the plaintiff, predecessor in title stated and gave to Abraham Bolinger the land which is now in dispute. If that is the case, gentlemen of the jury, then we say to you that the plaintiffs have no right, if their predecessors in title handed over to the defendant or their predecessors in title this piece of land, then of course, those who claim under that person could have no claim against them for damages."]    (3)

["And we say to you also, gentlemen of the jury, that under the evidence and pleading in this case, there being little, if any evidence, which justifies in allowing this plaintiff, if you find for, any damages except nominal damages. There is no evidence to show when this timber was cut, and it cannot be left to the jury to guess when it was cut."]    (4)

"2. The defendant having shown no title in himself or Laura Barnhart, his wife, and if the jury find from the evidence that the west boundary line of the James Mc-Mullen tract is North 27 East from the Southeast corner, of the said James McMullen survey and known as the Weaver corner, the defendant is liable for all timber which he cut or caused to be cut on the East side of the said line in the part of the James McMullen, described

in the plaintiff's statement and the plaintiff should recover the amount of damages he has sustained.

"Answer: This point is refused." (5)

"3. If the jury believe that the James McMullen tract was correctly located by J. Murray Africa and its West line also correctly run from the Weaver corner, the common corner of four surveys and was correctly represented on his map, or draft, the plaintiff would be entitled to recover from the defendant the market value of the timber trees cut or caused to be cut by the defendant over the West line of the James McMullen.

"Answer: This point is refused, because we have stated to you already in our general charge, gentlemen of the jury, no damages can be given to the plaintiff, if you find for him, except nominal damages, and that would be for you to determine, if you find for the plaintiff." (6)

"4. If the jury believe the alleged paper which Samuel Bolinger is alleged to have given Abraham Bolinger, in settlement of the action of trespass No. 40 April Term, 1874, was a receipt for the payment of $75 damages, and that by said paper or receipt, the said Abraham Bolinger was given the privilege of removing a fence to the old line, this would not give the said Abraham Bolinger or any other person the right to remove said fence to a new line, or new location, but to the old line or Valley line, running from the Weaver corner along the east side of the Josephus Murray, a survey of 1785.

"Answer: This point is refused as put. It is for the jury to take this testimony and consider it, with the other testimony in determining the location of this land." (7)

"5. If the jury find from the evidence that in the settlement of the action of trespass No. 40 April Term, 1874, Samuel Bolinger the plaintiff therein gave Abraham Bolinger the defendant, in the settlement of said suit a receipt for $75 and also in said receipt gave the said Abraham Bolinger the privilege of removing the fence to the old line, this privilege to remove the fence would not vest any right or authority in the alienees of the real es-

250    BOLINGER, Appellant, *v.* BARNHARDT.

Charge of Court below—Opinion of the Court. [64 Pa. Superior Ct.

tate of the said Abraham Bolinger or run with any lands he may have been owner, and would be but a personal privilege in the said Abraham Bolinger.

"Answer: This point is refused. This evidence is for the jury to consider in determining the location of this line." (8)

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned,* among others, were (1-8) above instructions quoting them; (15-17) rulings on evidence quoting the bill of exceptions.

*L. H. Beers,* with him *H. L. Henderson,* for appellant.

*James S. Wood,* for appellee.

Per Curiam, October 9, 1916:

This was an action of trespass quare clausum fregit for cutting down and carrying away a number of trees. The close was described in the plaintiff's statement of claim by metes and bounds, and was further identified as being the southern part of a larger tract of land surveyed under a warrant granted by the Commonwealth to James McMullen in 1794. The plea was not guilty. This appeal is from judgment on verdict in the defendant's favor.

Possession has by law a qualified property attached to it, which is valid until a better right be shown; and one who is in actual possession of land may, therefore, maintain trespass qu. cl. freg. against a mere intruder. It is argued that the instructions to the jury quoted in the first assignment of error were in conflict with this principle, but when they are considered in the light of the evidence it will be seen that they were not. The locus in quo was timber land. The plaintiff introduced no specific evidence as to his actual possession, but relied, apparently, on the constructive possession flowing from

his title.   In these circumstances it was not reversible error to instruct the jury that the plaintiff must recover, if at all, upon the strength of his title and could not depend on the weakness of the defendant's title.

The plaintiff showed by unimpeached documentary evidence a clear and complete title to the southern part of the McMullen tract, and introduced evidence which, if believed, established the western boundary line of the tract as being a line running N. 27° E. from the Weaver corner—this being the common corner of the McMullen and the Jacob Weaver tracts.   The location of the line upon the ground, depending as it largely did upon the conflicting testimony of surveyors, was a question for the jury under appropriate instructions by the court as to the rules of law by which they should be guided: therefore the plaintiff's point for binding direction was properly refused.   But in view of his clear title the plaintiff was entitled to have the jury instructed that if they found the line to be as shown by his evidence the defendant was a trespasser in cutting timber on the portion of the McMullen tract described in the statement of claim which lies east of that line, and was liable in damages for the timber so cut.   Explicit instructions to that effect would have relieved the case of much confusion and would have brought the jury's attention directly and pointedly to the controlling question it was their province to decide, namely, the true location on the ground of the western boundary line of the McMullen tract.   Such instructions were prayed in the plaintiff's points.   The only reason assigned by the court for refusing the points and for charging the jury that the plaintiff could recover no more than nominal damages was that there was "no evidence to show when this timber was cut, and it cannot be left to the jury to guess when it was cut."   We cannot take the same view of the evidence, and it seems needless to say that nothing that the plaintiff averred in the estrepement affidavit as to the cutting after June 29, 1912, estopped him from re-

covering for cutting done before May 22, 1912, the date of bringing the action. He testified as to a number of trees having been cut on the land in question east of the western boundary line of the McMullen tract and as to admissions made by the defendant that he had cut them. He also introduced evidence as to value. It is true he did not testify as to the time they were cut. But this omission was in part supplied by the testimony of the defendant's witness, Gifford, to the effect that as the employee of the defendant he cut several trees as early as May 2, 1912, east of the line as claimed by the plaintiff. It is not necessary at this time to discuss or determine the conflict of evidence as to the number of trees; it is enough for present purposes to show that there was evidence from which the jury could find substantial damages in favor of the plaintiff provided they found that the western boundary line of the McMullen tract was correctly located by Mr. Africa, his surveyor. Therefore these points, so far as they related to trees cut before suit brought, should have been affirmed, and the defendant's point (thirteenth assignment) should have been refused.

We have stated that the plaintiff had a clear title to the land up to the western boundary line of the McMullen tract as originally surveyed and returned under the warrant issued in 1794. In making that statement the evidence relating to the settlement in 1883 of the action of trespass brought in 1874 by Samuel Bolinger, the plaintiff's predecessor, against Abraham Bolinger, the defendant's predecessor, has not been overlooked. In considering the third, seventh and eighth assignments of error this evidence should be specifically referred to. The action was discontinued pursuant to a settlement in writing whereby it was agreed that Abraham Bolinger pay to Samuel Bolinger $75 in full of damages to date, and was "to have the privilege of moving the fence on old line." The court instructed the jury to take this evidence into consideration in determining the location of

the boundary between the properties, and permitted them to interpret the agreement as establishing the line at a certain place, and thereby giving to Abraham Bolinger the land now in dispute. The learned judge further said that if that was the case—that is, if the plaintiff's predecessor in title handed over to the defendant's predecessor in title this piece of land then the plaintiff could not recover. This was giving to the settlement agreement an effect it was not entitled to. In the first place, the mere permission to move the fence shows no unequivocal intention to establish a permanent boundary which should prevail whether it was the true boundary or not. See Perkins v. Gay, 3 S. & R. 327, at page 331; Holland v. Hayes, 40 Pa. Superior Ct. 195. In the second place, even if it be assumed that such was the intention, there is no evidence in the paper itself and no competent extrinsic evidence as to what the parties intended by the "old line." Prima facie there is as much reason to suppose that it was the original line of the McMullen tract as it was a line surveyed at a later date, and, referring to the parol evidence, it is sufficient to say that the question is not what line one of the parties had in mind, but what was the "old line" within the meaning and intent of both parties. As that question cannot be determined from the paper itself or from any competent extrinsic evidence in the case identifying the subject-matter of the agreement, there is no foundation for deduction either by the court or by the jury that the parties established a compromise line different from the true line, and therefore no substantial basis for applying to the case the well settled principles relating to consentable lines. Therefore there was error in the answers to the plaintiff's fourth and fifth points, and particularly in the instructions quoted in the third assignment of error.

The fifteenth assignment of error relates to the admission in evidence of the record of an action of trespass qu. cl. freg. brought in 1880 by Samuel Bolinger, the

plaintiff's predecessor, against Abraham Bolinger, the defendant's predecessor to recover damages for cutting timber on the land in question which terminated in a verdict for the defendant. As stated by counsel this record was offered "for the purpose of showing that this matter is res adjudicata, so far as this line is concerned." In support of this ruling court and counsel cited the case of Stevens v. Hughes, 31 Pa. 381, wherein it was declared that a judgment in trespass, upon a traverse of the plea of liberum tenementum, estops the party against whom it has been rendered, and his privies, from afterwards controverting the title to the same freehold in a subsequent action of trespass. But a perusal of the learned opinion of Judge STRONG in that case shows that the decision was based upon the nature of the issue joined on the plea of liberum tenementum, standing alone, and that the principle can have no application to a record consisting only of a declaration in trespass, a plea of not guilty and a verdict for the defendant. From such a record no conclusive or even prima facie presumption arises that the title was adjudicated. As was said in Kerr v. Chess, 7 Watts 367, the parties having gone to trial on the general issue are not concluded in respect of the title. Therefore the record was not admissible for the purpose for which it was offered, and as it is not apparent that it was admissible for any other purpose, the offer should have been rejected.

The plaintiff offered to prove that in 1871 John C. Bolinger and Samuel Bolinger, then being owners as tenants in common of the McMullen tract, made an amicable partition of the tract whereby it was divided into four purparts, the middle purparts being given to John C. Bolinger and the northern and southern to Samuel, and that after this partition each party entered into possession of his particular part. The offer as more fully quoted in the sixteenth assignment of error alleges the essentials of an executed parol partition. One objection urged against it was that a parol partition of

land is within the statute of frauds and binds no one. This objection cannot be sustained. As pointed out by Justice MITCHELL in Byers v. Byers, 183 Pa. 509, the cases have drawn the line between a mere parol agreement and an agreement followed by acts of the parties on the land itself indicating several possessions taken in execution of the agreement. "The former is inoperative, but the latter is valid." Its validity does not rest alone on the application of equitable principles to the part performance of a parol agreement relating to land but on the nature of tenancy in common. "As each tenant has not only title, but joint and several possession of the whole and of every part, the change to a title in severalty in any specified part is not such a transfer of title to land as is within the mischief contemplated by the statute of frauds": Byers v. Byers, supra; Mellon v. Reed, 114 Pa. 647; McKnight v. Bell, 135 Pa. 358; Wolf v. Wolf, 158 Pa. 621. "The result of such a partition does not convey a merely equitable right, but a right recognized and which will be enforced at law": McKnight v. Bell, supra.

Proof of the parol partition was further objected to on the ground that in 1881 John C. Bolinger made a deed to Samuel Bolinger for the southern part of the McMullen tract, that being the part that had been awarded to him in the alleged parol partition, but clearly the giving and acceptance of this deed did not preclude Samuel Bolinger or his successor in title from showing that his title in severalty to that part of the tract had vested ten years before. Such proof was not in contradiction of the decd. It is said, in view of this deed proof of the parol partition was unnecessary in making out the plaintiff's title, and therefore no harm was done by its rejection. It may not have been essential to the making out of the plaintiff's case,—the deed was sufficient for that purpose —but it was highly important in view of the admission of the testimony adduced by the defendant (sixteenth assignment) that in 1880 John C. Bolinger admitted the

line was where the defendant now claims it to be.  The offer to prove the parol partition should have been admitted, and if the evidence came up to the offer the court should have submitted it to the jury with the instruction that if a parol agreement of partition was made and executed in 1871, the title to the southern part of the McMullen tract then became vested in Samuel Bolinger in severalty, and that no ex parte declaration of John C. Bolinger as to the line made after that time could affect Samuel Bolinger or the plaintiff, his successor in title.

There is some merit in appellants criticism of that portion of the charge quoted in the second assignment of error.  It was not strictly accurate to say that the defendant's surveyor started at the Weaver corner in locating the line.  This was a misconception of his testimony as we understand it.  But, it is to be observed, the learned judge said nothing to bind the jury to his view of the testimony, and if counsel had called his attention to the inaccuracy doubtless he would have corrected it and made it harmless.  Under the circumstances it does not alone constitute reversible error.  See Commonwealth v. Razmus, 210 Pa. 609; Shade v. Llewellyn, 250 Pa. 456, and cases there cited.

Viewing as a whole the offer contained in the seventeenth assignment of error, it is not apparent that sufficient was alleged to entitle the plaintiff to introduce the map made by S. D. Caldwell in evidence, it not being alleged that he was dead or that his testimony could not be obtained.

The judgment is reversed and a venire facias de novo is awarded.