# Darlington's Appropriation.

In 1827 a husband could agree to a voluntary partition of real estate in which his wife was interested as an heir; and where equal partition could not be made, the interest of the wife was turned into money, by way of owelty, and could at that time have been reduced into possession by the husband.

Where the agreement to make partition is executed by lines of division, marked upon the ground, followed by a corresponding possession, that is sufficient to perfect it; mere strangers, being judgment creditors of the heir who owned the land, will not be permitted to dispute it.

The sum awarded for owelty was a lien on the land, and payable from the proceeds of its sale, in preference to subsequent liens creditors of the son, who claimed part of the land in his own right, and part by purchase from others of the heirs.

Presumption of payment of the wife's owelty, from lapse of time, may be rebutted by shewing a payment on account within twenty years; and the heir, as whose estate it was sold, and who was bound to pay it, is a competent witness, to prove that the share of the wife has *not* been paid.

When the husband is claiming the balance due on the wife's share, as the administrator of her estate, he is not estopped by proof of his declarations that he would not claim the same, there being no proof that the judgment creditors of the defendant in the execution were misled by such declarations.

APPEAL from the decree of the Common Pleas of *Perry County*.

This was an appeal from the decree of the court, distributing certain of the proceeds of a sheriff's sale, of the real estate of David Darlington.

Meredith Darlington died intestate, seized of a large tract of land, leaving a widow, named Jane, who has since died, and *issue*, four children, viz: David, Wilson, Samuel and Sarah. In November, 1827, an agreement under seal, for the partition of the land, was entered into by Jane, the widow, by Finlaw McCown, who was the husband of Sarah, by Wilson, and by Rice, as the guardian of Samuel, and seven men named to make division and appraisement. The agreement was acknowledged and recorded.

The inquisition shewed the land divided into *two* parts, and each part was valued. The agreement provided that the amount of the valuation and appraisement shall be a lien on the respective divisions.

David Darlington took possession of one part, containing 152 acres and 131 perches, part of which he sold, and remained in possession of the balance, till it was sold at sheriff's sale; and the fund was the subject of distribution. In 1836, Wilson Darlington and Samuel conveyed all their interest in the 152 acres and 131

[Darlington's Appropriation.]

perches to David Darlington, who had thus the interests of three of the heirs, himself being one.

The claim of Finlaw M'Cown, who had administered upon the estate of his wife, to the amount of the owelty in partition, was opposed by subsequent lien creditors, on several grounds. 1. That it was not a lien upon the estate sold. 2. That the estate of Sarah McCown was not divested, because she was not a party to the proceedings. 3. That Finlaw McCown, the administrator of her estate, is estopped from claiming it, because, as is alleged, he said he would not.

On the hearing before the auditor, appointed in the course of the proceeding, David Darlington was examined, after objection to his examination. He testified that but a part of the amount due for the interest of Sarah McCown had been paid.

The court decreed the amount due on that claim to Finlaw Mc-Cown.

It was assigned for error:

That the court erred in decreeing the payment out of the fund to Finlaw McCown, administrator of Sarah McCown, deceased.

2. In not decreeing payment out of said fund to appellants, on their judgment *vs.* David Darlington.

3. In admitting the testimony of David Darlington.

The case was argued by *D. Grant* and *Biddle* for appellants, *McClintock* being also concerned.

And by *Cornyn* and *McFarlane* for McCown.

The opinion of the court was delivered by

BELL, J.—Every question supposed to arise upon this record, has been settled, by repeated adjudications, in this court.

Among other determinations Long *vs.* Long, 1 *W.* 266; Calhoun *vs.* Hays, 8 *W.* & *S.* 131, and McMahon *vs.* McMahon, decided at the present term, may be cited as decisive of the validity of the voluntary partition made by the heirs of the late Meredith Darlington, and its binding efficacy upon Finlaw McCown and his late wife, even were they here contesting it. By our law, a husband may compel partition of a wife's interest in an estate, without her assent; and where equal partition cannot be made, the interest of the *feme* is turned into money by way of owelty. At least this was so in 1827, when this transaction had place, and the sum awarded to equalize the parties might then have been claimed and reduced to possession by the husband. As, then, these parties did no more than they might have been coerced to at law, their acts in *pais* are binding, though one of them was under coverture, and another a minor. Nor does it make any dif-

ference that Mrs. McCown never formally conveyed or released her interest in the purpart allotted to her brother Daniel. The agreement to make partition was actually executed by lines of division marked upon the ground, followed by a corresponding possession, which is sufficient to perfect it, even as between joint tenants and tenants in common. But as the tenure, under our system of descents, partakes of the nature of coparcenary, it is scarce to be questioned that a parol partition between heirs, in Pennsylvania, would be good, for the same reason that makes it binding upon parceners, whether that be, as stated by Blackstone, because they were subject to coerced partition by writ, or, according to other jurists, because the undivided estate was cast upon them by law.

In this case, however, none of the parties to the partition are disputing it. It was, in fact made by all having an interest in the subject of it, before the referees were called in to ascertain the owelty, and now all of them, yet living, sanction it; the very claim in question being preferred by McCown, as the representative of his deceased wife, in affirmance of it. With what show of reason, then, can mere strangers object to it? That the judgment creditors are aliens to the family arrangement must be conceded. That they have no power over it, were it even voidable under the objection of a party to it, is shown by Burke *vs.* Young, 2 *S.* & *R.* 383; Love *vs.* Jones, 4 *W.* 471; and Long *vs.* Long, 1 *W.* 266.

The last case cited, together with Barnitz *vs.* Smith, 1 *W.* & *S.* 145; Stewartson *vs.* Watts, 8 *W.* 396; and Bury *vs.* Sieber, 5 *Barr* 433, settle, that the sum awarded for owelty, under the agreement of the parties, was a lien on the land, and consequently payable from its proceeds, in preference to the subsequent lien creditors of David, who must be taken to have acquired their respective liens with a full knowledge of the prior incumbrance.

The presumption of payment from lapse of time is subject to be rebutted. In this instance it is clearly answered, as well by the receipt given in evidence, showing a payment on account within twenty years, as by the testimony of David Darlington. That he was competent so to testify is very certain, for he testified against his own interest, by proving the continued existence of a personal liability, which the presumption unanswered would have relieved him from, as well as from the stress of the judgment to the amount of the sum claimed by McCown. In this connection may be cited Stewart *vs.* Stocker, 1 *W.* 135, and Long *vs.* Long, *supra.*

Even were the husband claiming, in his own right, the pretence of estoppel, supposed to flow from his declarations of an intention not to collect the debt, would be without foundation, since there is no proof the judgment creditors were misled by them. But another answer is, that he claims in *auter droit*, as administrator.—

But that in this character he may recover the amount awarded to his wife for owelty, will not admit of question. Strawbridge *vs.* Funstone, 1 *W. & S.* 517.

Decree affirmed.