36  453
135  373

## Sabins *versus* McGhee *et al.*

If a resurvey abandon the lines of the original survey, and the parties subsequently claim by the resurvey, the land thrown out by it is abandoned and left open for reappropriation.

A recovery in an action of trespass *quare clausum fregit,* where the only plea was *liberum tenementum,* is not conclusive of the title, in a subsequent action of ejectment for the same land.

The doctrine of Stevens *v.* Hughes, 7 *Casey* 383, has not, as yet, been extended to actions of ejectment.

ERROR to the Common Pleas of *Clearfield county.*

This was an ejectment by Ira A. Sabins against Thomas A. McGhee, John McGhee, and Philip McGhee, for part of a tract of land in Bell township, surveyed in the name of Ira A. Sabins.

The plaintiff claimed by virtue of his improvement right, with a warrant and survey thereon, made on the 15th August 1848. The contest arose out of that survey being partly located upon land claimed by the defendants under an older warrant and survey.

The defendants' tract was originally surveyed in June 1793. upon a warrant to Dr. William Smith. In 1808, under the authority of an Act of Assembly, there was a resurvey, and the principal question of fact before the jury was, whether the defendants and those under whom they claimed, had subsequently claimed by the lines of the original survey, or by those of the resurvey. The latter threw out the piece of land in controversy.

At September Term 1850, the plaintiff instituted an action of trespass *quare clausum fregit* against the defendants, for cutting timber on the land in dispute; the defendants pleaded *liberum tenementum;* and on the trial, there was a verdict for the plaintiff for five dollars damages.

On the trial, the plaintiff's counsel presented the following points upon which he requested the court to charge the jury:—

1. The record and verdict, with judgment thereon in the former action of trespass *quare clausum fregit* for the same land, and between the same parties, to No. 40, September Term 1850, upon the single issue of *liberum tenementum,* is conclusive of the title, and the plaintiff is entitled to recover.

2. The resurvey of 1808 is made by authority; it is binding upon the defendant under the evidence in the cause, and the verdict must be for the plaintiff.

3. If the jury believe the Nicklin & Griffith line to be found marked upon the ground, with the proper corners for the original

survey, and the line of 1808 also marked upon the ground with the proper corners, all between those lines is vacant land.

4. The possession of the portion of land included between the two lines by a mill-dam, without residence and settlement, is insufficient to protect the defendants.

The court below (BURNSIDE, P. J.) instructed the jury as follows:—

"The plaintiff claims title under a warrant of the 15th July 1848, for 230 acres, interest to commence on the 1st day of September, A. D. 1844. On the 15th August then next, a survey was made of 214 acres, which has never been accepted in the land office.

"The defendants deduce their title from a warrant of 1792, to the Rev. Dr. Smith, a survey thereon of the 14th June 1793, which was returned on the 15th July 1794. Courses and lines, corresponding with the date of the survey, are found on the ground, and it is in evidence, that the traverse of the river, as laid down in the official draft, corresponds with the official courses of the same. This would end the cause, but it is shown, that on the 7th April 1807, the then owners of this, and some twelve other adjoining surveys, petitioned the board of property for an order of resurvey, stating in their petition ' that it is alleged that there are inaccuracies in the surveys of the said land, and some interferences, and before a partition can be made it is necessary more particularly to identify and ascertain the quanties in said surveys.' The board granted the order for a resurvey, which was made on the 15th of April 1808, and accepted on the 21st November of the same year. This resurvey made a different line on the eastern end of this tract; established a new line some 63 perches south of the long line, parallel to the river; and from sugar corner, then established, ran the course of the original survey to the old hickory; the river was laid down as in the original survey. The course from the sugar to the hickory is found to be S. 4° E. no marks are found on it; while in the line of the original survey, S. 4° E. to the hickory, is found a tree which blocks to the date of the resurvey, viz. 1808. As no patent has ever issued for this land, and as it was all included in the original survey, and the Commonwealth was paid for it, we hold, on the authority of Bryson *v.* Hower, 8 *S. & R.* 409, that if you find that the deputy surveyor who made the resurvey, either by mistake or design, left out a portion of the tract, the original owner, or those claiming under him, would still have the right to his patent, under his original survey, unless he abandoned, and claimed by the lines of the resurvey. The resurvey, as returned, takes from the defendants about one-third of their land, and the marks on the line, from the sugar to the hickory, do not corres-

[*Sabins v. McGhee et al.*]

pond with the return of resurvey. How have the defendants held? On the one hand, it has been shown that they have cut timber outside of the old survey, and within the lines of the resurvey, and that in a deed they hold a portion of the land, in which the resurvey is made part of the recital. On the other hand, you have evidence that they made an improvement on the western end of the tract, part of which was outside of the line S. 4 E. from the hickory to the sugar, but within the lines of the original survey. It is true, this improvement was for some time suffered to go down, but it was afterwards resumed, and is now occupied. Nor is this all; the defendants in 1839 built a valuable grist-mill, at great cost, the mill-dam of which is altogether on that part of the land which lies within the lines of 1793 and 1808; and that a cabin-house was built upon that portion which was in the actual occupancy of the man called Hewitt, at the time the plaintiff's survey was made.

"If you, then, should be of opinion, from all the evidence, that neither the defendants, nor those under whom they claim, ever abandoned the survey as originally made, your verdict should be for them. If, on the other hand, you find that they did abandon it, and claimed only to the lines of the resurvey, then the plaintiff would be entitled to your verdict.

"Certain points have been presented to us by the counsel of the plaintiff, which we will now proceed to answer :—

"1. We answer the first point in the negative. (It is proper to say, that since this case was tried, we have seen the opinion of the Supreme Court in Stevens v. Hughes, 7 *Casey* 383, which we think sustains us in the answer we gave.)

"2 and 3. These points are answered in the general charge, and we reiterate what was then said : that is a question for you, under all the evidence, to say whether the defendants, and those under whom they deduce title, claimed to hold by the lines of the original survey, or by the lines of the resurvey.

"4. This point we answer affirmatively."

To this charge the plaintiff excepted; and a verdict and judgment having been rendered for the defendants, the plaintiff sued out this writ, and here assigned such charge for error.

*W. A. Wallace*, for the plaintiff in error.—The resurvey having been marked upon the ground, returned and accepted, was binding on the parties; and after acquiescing in it for a period of 36 years, they cannot assert a claim under the original survey : Bellas v. Levan, 4 *Watts* 294; Goddard v. Gloninger, 5 *Id.* 209; Norris v. Hamilton, 7 *Id.* 91; Collins v. Barclay, 7 *Barr* 67; Nieman v. Ward, 1 *W. & S.* 68; Strimpfler v. Roberts, 6 *Harris* 297; Fox v. Lyon, 3 *Casey* 17; Coxe v. Woolbach, 2 *Id.* 122; Layton v.

[*Sabins v.* McGhee *et al.*]

Paull, 5 *Watts* 465; Adams *v.* Jackson, 4 *W. & S.* 78; Raush *v.* Miller, 12 *Harris* 277; Cassidy *v.* Conway, 1 *Casey* 240; Carbon Run Improvement Co. *v.* Rockafeller, *Id.* 49.

The former recovery in trespass was conclusive of the title: 2 *Smith's Lead. Cas.* 572, &c.; Marsh *v.* Pier, 4 *Rawle* 273; Bower *v.* Tallman, 5 *W. & S.* 566; Stevens *v.* Hughes, 7 *Casey* 381.

*L. J. Crans,* for the defendants in error, cited Caufman *v.* Cedar Spring Congregation, 6 *Binn.* 59; Blair *v.* McKee, 6 *S. & R.* 204–5; Merchant *v.* Millison, 3 *Yeates* 73; Hole *v.* Rittenhouse, 1 *Casey* 497; Adams *v.* Jackson, 4 *W. & S.* 76; Maris *v.* Hanna, *Id.* 348; Bryson *v.* Hower, 8 *S. & R.* 409.

The opinion of the court was delivered by

WOODWARD, J.—The plaintiff's points, 2d, 3d, and 4th, were awkwardly answered by the court, but still we think the case was substantially put to the jury as a question of location, which it really was. The resurvey of 1808, made by due authority, was no doubt binding on all subsequent purchasers of the Smith tract, but whether it included the land in dispute was a question of fact. It was *the* question in the cause, and it was referred to the jury, when the court told them that if, from all the evidence, they should be of opinion that neither the defendants, nor those under whom they claim, ever abandoned the survey as originally made, the verdict should be for the defendants; but if, on the other hand, the original survey was abandoned, and the defendants claimed only to the lines of the resurvey, then the plaintiff would be entitled to the verdict.

If this language were strictly construed, it would amount to a direction to find for the plaintiff, for there is no doubt the defendants claimed by the lines of the resurvey. Of such a direction the plaintiff would have no reason to complain in a court of error.

But the judge meant that if the resurvey abandoned the lines of the original survey, and the defendants claimed by the lines of the resurvey, then the land in dispute was abandoned by them, and left open to reappropriation.

In other words, he meant the jury should decide whether the land sued for in this action was or was not within the lines of the resurvey.

This was the legitimate question in the cause, and we think it was well decided by the jury. On looking through the proofs, we not only find evidence that made it proper to submit that question to the jury, but we think the proofs preponderate heavily against the notion that there was any more vacant land between the Smith and Nicklin warrants, after the resurvey of 1808, than there was before.

We do not feel it our duty to discuss the evidence as bearing

[Sabins *v.* McGhee *et al.*]

on this point, for the jury have decided it rightly; but we will say, that the attempt to relocate old surveys, long since returned into the land office as adjoiners, so as to get vacant land between them, rarely succeeds or deserves success: and of such attempts this is one of the least meritorious that has come under our notice.

In regard to the first of the plaintiff's points, it is enough to say that in Stevens *v.* Hughes, 7 *Casey* 383, where the effect of the plea of *liberum tenementum*, in actions of trespass, was fully explicated, we took care not to apply the rule there recognised to actions of ejectment. Such an application may ultimately be made of the rule, but we do not feel prepared for it yet. The court were right, therefore, in refusing to instruct as prayed for in the plaintiff's first point.

The judgment is affirmed.