# Patterson *versus* Dushane.

1. In an action of trover, the plaintiff claimed the ownership of certain government bonds, as a gift from her deceased aunt. *Held*, That her deceased aunt was the assignor of the thing in controversy, within the meaning of the Act of April 15th, 1869, P. L., 50, and that therefore, the plaintiff was not competent to testify as to the gift.

2. An executor against whom personally an action of trover has been brought for property, which he has accounted for, and distributed as executor, is entitled to raise any question by way of defence that there could have been raised by or for the estate had the suit been brought against him as executor

3. If there be more than a scintilla of evidence in support of the plain-

[Patterson *v.* Dushane.]

tiff's case, even though it be weak, it is error for the court not to submit it to the jury.

February 1, 1887. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ., TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Fayette county*: Of January Term, 1887, No. 250.

Trover by Minerva S. Patterson and M. M. Patterson, her husband, in right of the wife against Joshua M. Dushane to recover the value of $10,500 of registered 5-20 United States coupon bonds.

On the trial before WILLSON, P. J., the plaintiff testified that the bonds in question had been given to her by her aunt, now dead, with whom she had lived for more than two years and whom she had nursed and cared for during this time. That she received them from her aunt and had them in her exclusive custody until the defendant persuaded her to give them to him for safe keeping. That after her aunt died she demanded them from him, and that he refused to give them to her. There was evidence corroborative of this which appears in the opinion of the Supreme Court.

The defendant was executor of the will of the aunt of the plaintiff. He testified that he had held the bonds appraised as part of the estate of the decedent, had charged himself with the same, and had accounted for and distributed them to the next of kin of the decedent.

On motion the court struck out the evidence of both the plaintiff and the defendant as incompetent under the Act of April 15th, 1869, P. L., 50, and then directed the jury to find a verdict for the defendant.

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ, assigning for error the action of the court as shown above.

*Nathaniel Ewing (William H. Playford* with him) for plaintiff in error.

Since the passage of the Act of 1869 all witnesses are *prima facie* competent so far as interest and policy are in the question; and the court must discountenance all objections on the score of interest and policy unless they be made clearly to appear. McClelland's Ex'r *v.* West's Ex'r, 20 P. F. S., 183. Hence the presumption is that Mrs. Patterson is competent generally. Her incompetency as to matters occurring in the life-time of Mrs. Connell must, therefore, be made clearly to appear, before the court would be warranted in withdrawing her testimony from the jury.

It is true that the plaintiff claims by gift from Mrs. Connell in her life-time, and that the defendant grounds his defence upon Mrs. Connell's title, but it is submitted that these facts do not make Mrs. Connell the assignor of the thing in action within either the letter or spirit of the law. The rights of the decedent must be affected, and the contest must be between parties claiming such rights by devolution on the death of the owner. Cawley, Adm'x *v.* Wilson, 7 Phila. 676. Dushane does not possess or enjoy the rights of the decedent by devolution, or otherwise. In this respect this case differs materially from the adjudicated cases. In Diehl *v.* Emig, 15 P. F. S., 320, the point determined was that the vendee of a decedent was incompetent to prove facts occurring in the life-time of the decedent *against his devisee.* In Karns *v.* Tanner, 16 P. F. S., 297, the survivor to a controversy was held incompetent as against the *owner of the deceased party's title.* In Hess *v.* Gourley, 8 Nor., 195, the devisee of a wife was held incompetent to prove the wife's title against the *heir of the deceased husband.* And of like character are the points decided in all the cases which have arisen since the passage of the Act of 1869. In every one of them the action was by or against the *representative* of a decedent or the *owner of the decedent's title,* neither of which is the case here.

Upon a question of the submission of a case to the jury "the court must take the testimony as true, with every reasonable inference favorable to him who has the burden of proof:" Blakeslee *v.* Scott, 37 Leg. Int., 474. Viewed in that light can there be any possible escape from the submission of this case to the jury?

"Any evidence which would justify an inference of the disputed fact must go to the jury, no matter how strong or persuasive the countervailing proof:" Express Co. *v.* Wile, 14 P. F. S., 201; Bank *v.* Wirebach's Ex'r, 10 Out., 37; Norton & Co. *v.* Breitenbach, 1 Pears., 467. "In an action at law the testimony of a single witness, offered to establish a controverted point, must be submitted to the jury no matter how flatly contradicted it may be." Weaver *v.* Craighead, 8 Out., 288. The question involved in the case is purely one of fact, which it is the duty of the jury alone to determine, and the plaintiff's proof was positive, direct and ample. The credibility of the witnesses could not be decided by the court, for that is peculiarly the province of the jury. Heister *v.* Lynch, 1 Yeates, 108; Massey *v.* Buck, 1 Phila., 215; Prowattain *v.* Tindall, 30 P. F. S., 295; Shaffer *v.* Clark, 9 Nor., 94. And "contradictory statements go merely to the credibility of a witness, and must be referred to the jury." Miller *v.* Stem, 2 Jones, 383.

*Charles E. Boyle*, for defendant in error presented no paper book. ;

Mr. Justice PAXSON delivered the opinion of the court, March 7th, 1887. ;

At the close of the trial below, the learned judge withdrew from the jury so much of the evidence of both the plaintiff and defendant, as related to matters which occurred in the life time of Sidney Connell. It is hardly necessary to say, that if he was right in withdrawing the testimony of the plaintiff, it was his plain duty to exclude that of the defendant. No distinction can be made between them upon principle. ;

The action was trover, and the plaintiff claims to recover the value of $10,500 of government bonds which she alleged she deposited with defendant for safe keeping. She claims title by virtue of an oral gift from Sidney Connell, who died shortly after the alleged gift, and prior to the commencement of this suit. The defendant sets up title in the said Sidney Connell; denies the gift to plaintiff, and alleged, and clearly proved that he accounted to the estate of Mrs. Connell for the bonds, and that the same have been distributed to her next of kin upon the settlement of her estate. This is not a suit by or against the estate, nor does the estate appear to have any interest in this controversy. I do not see, however, that the latter fact can properly affect the question. If the executor has turned over the bonds to the estate in the performance of his duty and in the belief that they belonged to said estate, it seems clear that when sued for the bonds personally, he would be entitled to raise any question by way of defence, that could have been raised by or for the estate, had the suit been against the executor or administration of Sidney Connell, deceased.

We come then directly to the competency of the plaintiff as a witness. If she had made out her title without reference to Mrs. Connell, she would have been competent. This she did not do, nor do I see how it would have been possible under the evidence to have done so. Both parties claimed title through Sidney Connell, and she was the assignor of the thing in controversy, within the meaning of the Act of 1869. In Diehl *v.* Emig, 65 Penn, 320, it was held that in an ejectment by a daughter grounded on a lost deed of gift from her deceased father, she and her husband were not competent witnesses as to what occurred prior to her father's death. There is nothing in Karns *v.* Tanner, and the line of cases following, that in any degree impairs the rule in Diehl *v.* Emig, and a further discussion of this branch of the case would be unprofit-

able.   We are of opinion that the learned judge was right in excluding the testimony referred to.

This took out of the case pretty much all there was in it. The court below evidently thought there was nothing left, and gave a binding instruction to find for the defendant.   The plaintiff complains of this and says there was evidence outside of her own testimony to entitle the case to go to the jury.

'I have examined the testimony with care, and while it is weak, there is more than a scintilla.   Clark Brundridg swears that he was present at an interview between the plaintiff, the defendant, and Mrs Connell; that the plaintiff handed the defendant a small box containing the bonds in controversy; that Mrs. Connell told him to count them to Minerva (the plaintiff); that they belonged to her; . . . that the plaintiff told him to take care of them; that they were hers; that if she lost them she would be compelled to get married, and Temperance King said she saw the bonds in the possession of the plaintiff; that the latter kept them in her room at Mrs. Connell's house.   W. H. Dinsmore said that Mrs. Connell told him how that she had given some bonds to the plaintiff.   All this, if believed, might lead to the conclusion that Mrs. Connell had given the bonds to the plaintiff, and if accompanied by delivery would make a good title.   We are of opinion that it should have been submitted to the jury.

Judgment reversed and a *venire facias de novo* awarded.