## ROBERT McKNIGHT v. EDWARD BELL.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BLAIR COUNTY.

Argued April 24, 1890—Decided May 26, 1890.
[To be reported.]

1. Notwithstanding what was said to the contrary, in Gratz v. Gratz, 4 R. 410, it is now well settled that a parol partition of lands between tenants in common is not a sale or transfer of lands within the provisions of the statute of frauds.
2. If tenants in common, intending to make partition, run and mark upon the ground a division line, and actually take possession of their respective parts in pursuance thereof, and the partition is fully executed between them, the title will vest in severalty.
3. The result of such a partition does not confer merely an equitable right, but a right which will be recognized and enforced at law: ejectment would not lie to enforce payment of owelty, nor, in the absence of a contract for a conveyance, would equity decree one.
4. Wherefore, in an action of ejectment involving the question whether a

Statement of Facts.

parol partition has actually been made and executed, the judge does not sit as a chancellor, nor is it necessary that the partition be established by the measure of proof required to establish a parol sale.

5. As in all other cases at law, the court should first determine whether there is any evidence of the fact sought to be established from which the jury can properly find the question for the party on whom rests the burden of proof, and if there is, it should be submitted to them.

6. Though a judgment upon a traverse of the plea of liberum tenementum in an action of trespass, when that is the only plea, is conclusive in a second action of trespass wherein a freehold of the same class is attempted to be put in controversy;

7. Yet, such judgment is not conclusive of the title in a subsequent ejectment for the same land; especially, when the plea of liberum tenementum was accompanied by the plea of not guilty, although it be shown that the only dispute on the first trial was as to title.

8. A declaration admitting title in another, made to one who afterwards purchased the land as the property of the person named, will not estop the declarant, if such purchase was not contemplated at the date of the declaration, and is not shown to have been made in reliance thereon.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 216 January Term 1890, Sup. Ct.; court below, No. 71 June Term 1887, C. P.

On May 18, 1887, Robert McKnight brought ejectment against Edward Bell for the undivided one half of 39 acres of land in Antis township. The defendant pleaded not guilty.

At the trial on February 26, 1889, the following facts were shown:

Robert McKnight, Sr., father of the plaintiff, died in 1860, seised of a number of pieces of real estate, among which was a farm in Antis township containing 174 acres. By his will, he devised his real estate to his six sons, John, William, Blair, Robert, Wilson and Reuben. In March, 1875, by virtue of an amicable partition, the details of which are stated in the opinion of the Supreme Court, infra, Blair became the owner of 96 acres and 149 perches of the farm lying east of the township road leading from Altoona to Tyrone, and William and Robert became the owners of that part of the farm lying west of said road, containing 78 acres, 144 perches. The 96 acre tract taken by Blair afterwards became vested in his brothers Wilson and Reuben. The 78 acre tract taken by William and Robert was

divided into two nearly equal pieces by a lane; 39 acres and 84 perches of it lying north of the lane, and 39 acres and 60 perches lying south thereof. The land described in the writ of ejectment is that part of the tract of William and Robert situated north of the lane. Having adduced evidence as to these .facts, and the defendant's possession of the land in controversy, the plaintiff rested.

The defendant called witnesses whose testimony tended to prove that, prior to and at the time of the original partition of the farm, the understanding with which William and Robert agreed to join in taking the 78 acres was that it should be divided between them, William taking the part to the north, and Robert that to the south of the lane; that thereafter they separately farmed those portions of it, respectively, and Robert spoke of the southern part as his, and of the northern part as William's; that, in 1877, a surveyor who was employed by Wilson to make a draft of the original farm and its subdivisions, ran a line along the lane, and, in making his draft, designated the land north of that line as William's and the land south of it as Robert's; that William and Robert and some of their brothers were present a part of the time while the surveyor was at work on the ground, Robert being present while he was engaged in fixing one of the corners in the lane, and that the brothers consulted about how the lines of the subdivisions should be run, Robert making no objection to the running of the line along the lane; that prior to 1879 the farm had been assessed for taxes as a whole, but in that year Robert reported to the assessor that it had been divided, and that he owned the 39 acres south of the lane and William owned the 39 acres north thereof, whereupon the assessor in his return assessed William and Robert separately with 39 acres each; and that at different times and to different persons Robert made declarations to the effect that a division between himself and William had been made, the lane being the boundary line between them.

The defendant showed, further, that the 39 acres south of the lane had been sold at sheriff's sale in 1881, as the property of Robert McKnight, to Edmund Shaw, for less than the amount of the judgments standing against Robert, the tract being described in the levy and sheriff's deed as bounded on the north by land of William McKnight; that on May 31, 1881, Robert

McKnight and wife executed a deed to Shaw, the purchaser at the sheriff's sale, as a further assurance of title, describing the land in the same way; that in 1884, by virtue of an execution issued upon a judgment in favor of Mary McKnight, entered upon an instrument dated in January, 1881, the sheriff levied upon the land north of the lane as the property of William McKnight, and sold the same to A. L. McCartney, a brother-in-law of William and Robert, and McCartney on June 15, 1885, conveyed the same to the defendant, Edward Bell. At the time of the sheriff's sale to McCartney, Robert McKnight was not in that part of the country.

McCartney testified for the defendant that in 1879 or 1880, Robert McKnight, in a conversation with the witness about the payment of a bill which he owed to the firm of McCartney & Gwinn, stated that William and himself had divided the 78 acres between them, and that he, Robert, owned the part south of the lane and William owned that north of the lane, and proposed to sell the former to the witness, and in that way make arrangements for the payment of his debt; to which proposal the witness replied that he would not want to buy that part of the land unless he could buy William's part too, and Robert then said, " You can buy William's."

The defendant offered in evidence the record of an action of trespass quare clausum fregit, brought by Edward Bell against Robert McKnight, at No. 138 June Term 1886, in the court below, the record showing that in said action the defendant pleaded not guilty and liberum tenementum, and that on April 1, 1887, a verdict was rendered for the plaintiff therein, upon which judgment was subsequently entered: this "to be followed by proof that the defendant, Robert McKnight, is the present plaintiff, and that his defence in said suit, No. 138 June Term 1886, was the same as his claim in the present case; that said suit, No. 138 June Term 1886, was between the same parties and involved the same question precisely as the present suit: this is offered as a bar to the plaintiff's right to recover in the present suit."

By the court: This offer is overruled as a bar, it appearing that the plaintiff relies upon a legal title. This not being an equitable ejectment, but the plaintiff seeking to recover on his legal title, we are of the opinion the verdict would not be a bar;

and the record is not admitted, nor the proposed evidence, as a bar to the pending action ; and the offer, in so far, is over-ruled.   But the record is admissible as showing that the plea of liberum tenementum was entered.   We think it is admissible as persuasive evidence in connection with the testimony pro-posed to be offered by the defendant; exception.[4]

The defendant afterwards testified that the question actually tried in the action of trespass was identically the same as that involved in this case.

In rebuttal, the plaintiff presented testimony tending to dis-prove some of the statements of the defendant's witnesses re-specting alleged declarations of the plaintiff, and to show that while the plaintiff and his brother had talked of making a di-vision of their land, no partition between them was ever made; that William had sold to Robert the undivided half of the land south of the lane, but that Robert had never parted with his interest in the land in controversy.

At the close of the testimony the court, WHITE, P. J., 40th district, specially presiding, charged the jury in part as follows:

This is a proper case for us to observe that under our juris-prudence, in civil courts, there are clear lines of distinction be-tween the duty of the court and that of the jury in the trial of cases.   In order to relieve your consciences of any responsibility in assenting to a verdict which your judgment may not sanc-tion, it is not only the privilege but the absolute duty of the court, in cases of this character, to survey the facts submitted in evidence by the parties to regulate their rights ; and, if the court, after such careful survey, comes to the conclusion that it will not sustain the position of one of the parties, particularly in cases where parol arrangements are set up to settle title in favor of one party, it is the duty of the court to say so to the jury and take the responsibility.   In view of the conclusions at which we have arrived, this is a case proper for us to take that responsibility and to so inform the jury.

—After stating the substance of the plaintiff's evidence, in his case in chief, the court continued :

Upon showing these facts that we have epitomized to you, a prima facie case arises in favor of Robert for the claim he makes in his right.   The defendant, however, denies that, and alleges

### Charge of Court below.

that such a condition of things occurred as vests the title that Robert had at one time in that part, in the defendant.

In the first place, this contention is sought to be supported by the defence setting up that there was an actual partition of these eighty acres between Robert and William, making a certain old lane that ran through the eighty acres, it appears almost through the centre of it, the dividing line; and that Robert owned the one part, as the law says "in severalty," after such partition; and William owned the other part in severalty, which is the part that is the subject of this contention. It is incumbent upon the defendant, setting up such a claim, to show such a condition of things as will establish what he contends for. . . . .

It is very well known to you, doubtless, that title to real estate can only be settled ordinarily by a writing between the parties, under the operation of what is called the statute of frauds and perjuries. We will not enlarge any more than to make it intelligible. Our courts have so interpreted that statute as to not make it the means of fraud and wrong, but to do equity and right; and have excepted from its operations certain kinds of verbal arrangements to be proved, indicating that where a contract by parol has been made between parties about the purchase and sale of land and has been so far executed by the purchaser taking possession of the land whose boundaries are clearly defined, paying the purchase money or a portion of it, or making improvements resulting in such a condition that it would be inequitable to disturb the matter, a contract which is executed; these are exceptions to the ordinary rules. When a contention about that arises in court, the party setting up that arrangement must satisfy the court by evidence showing that an arrangement or contract was made in such a way that the court, if it is true, would execute it. We say it is the duty of the court, on a survey of the facts, to see if they are sufficient and then to submit the facts to the jury to pass upon their truth or otherwise.

Our courts, in wise precaution, have indicated a rule to be applied to such alleged contracts and the testimony offered to support them. The testimony must be clear, distinct and indubitable; that is to say, the contract must be clearly set out or must clearly appear. It must be precise, so that if it is true, it can be executed. It must be indubitable; that is to

Charge of Court below.

say, must come from witnesses who are credible and believed, and who testify under such circumstances as to carry the conviction of a knowledge of what they speak and that they speak truthfully. We do not say, however, that the rule is that it must be proven beyond a reasonable doubt, as in criminal cases. It is sufficient to say we have indicated the rule. That is the rule in relation to transactions about the purchase and sale of real estate, ordinarily. While the contention here is about real estate, yet the sharp and particular rule indicated by the statute of frauds and perjuries, in our adjudications on that subject, is not required, we say to you, where a partition of real estate is alleged to have been made by parol between tenants in common. Why? We will not enlarge upon the reason or the logic about it more than to say that, inasmuch as both the owners, the tenants in common, owned title to the whole of it, when they divided it it was merely separating between them in severalty, a concentrating of the title which they have to the whole of the land. To relieve ourselves of any doubts upon that subject and to be perfectly safe, we will quote one of the latest utterances of the Supreme Court in discussing this question.

—The court here quoted from the opinion of the Supreme Court in Mellon v. Reed, 114 Pa. 647, at page 653, and then proceeded:

Of course that is the law as to that point.

[While that is so and it does not require to be put in writing, yet the evidence upon which the parol partition is to be supported, we think, should be clear and satisfactory. Not to stick upon words, but to be abundantly safe, we will drop the expression " clear " and say " should be shown by evidence that is satisfactory." Satisfactory of what? Satisfactory as to the fact that there was a partition made between the parties owning the land as tenants in common; actually agreed upon and made, not merely in prospect; and that after the partition was agreed upon, it was actually executed between the two parties, each taking possession or control of the part that was set off to him and which he accepted to himself. In the absence of satisfactory testimony showing the court and the jury that such partition was actually made between these parties, between the tenants in common, it is the duty of the court to

say that the evidence of the partition is insufficient; and this we do, not upon a view of one side of the case alone, but after a survey of all the testimony in the case.] [1] . . . . .

After reviewing the testimony for the defendant and the plaintiffs' testimony in rebuttal, the court instructed the jury further as follows:

[Now, gentlemen, on a survey of this whole case we have come to the conclusion that the evidence is insufficient to show that a partition, an actual division of this property between William and Robert, was made, and that possession was taken by each accordingly; or, in other words, that a partition was ever so executed as the law requires to make effective a parol partition; therefore, we direct you to return a verdict for the plaintiff for the undivided half of the land described in the writ. That raises the question distinctly, then, as to the sufficiency of the testimony about the parol partition.] [2]

It is contended, however, further, by the defendant, that, notwithstanding there may not have been such a parol partition executed between William and Robert, as would prevail in a contention between them, yet, this being the case of Robert McKnight against Edward Bell, the vendee of the purchaser at the sheriff's sale of William's interest in the land, such a condition of things exists as would estop Robert from asserting his title against him, Bell. We recognize, to its fullest extent, the very fair and equitable doctrine of estoppel. . . . . That equitable estoppel prevails; but there must be sufficient facts to raise that. What exists here? Allen McCartney is the purchaser. What was done to him by Robert? Several years ago he came there and talked to Robert about a bill that he owed the firm of which McCartney was a member. Allen McCartney is a brother-in-law of Robert. Robert said he had not the money, and proposed to sell him his land and spoke about this part being his. Mr. McCartney said he would not buy that, unless he could buy the other, that is, William's. Robert replied, "You can buy that, too." The subject matter of the conversation was the payment of this bill. That was several years before the sheriff's sale. Survey the record, and where do we find any evidence connecting this sheriff's sale or the purchase of McCartney with this remark or conversation of Robert several years before? We look in vain to discover

any.  Perchance the relations between the parties may have changed in the meantime.  When the sheriff's sale took place, it is unquestionable that Robert was not in the country.  The fact that an understanding existed in the country, among the people, we cannot say that the law would recognize as a circumstance to be considered as against Robert, unless Robert's agency in it was clearly established, and that was connected as an inducement to McCartney to make the purchase.  We have to wonder and speculate about that, because that was not stated.  Those are the only circumstances relied upon, that we can recollect, that raises the question of estoppel.

Now, why is an estoppel raised?  Because it is a fraud to allow a man to assert a claim to property that he has induced another, or done acts that had induced another, to buy.  It is a very plain principle that we cannot presume fraud; so, then, we must have some testimony from which we can infer that such a condition of things existed as that it would be a fraud to allow Robert to assert his title against the purchaser at the sheriff's sale.  Then, again, a certain degree of vigilance is required on the part of the purchaser of real estate when he knows of some question about the title.  Vigilantibus, non dormientibus, jura subveniunt, is a maxim of the law, and it means, " the law assists those who are vigilant, not those who sleep over their rights."  It has been decided by the Supreme Court, that whatever puts a party upon inquiry amounts to a notice, provided the inquiry would lead to a knowledge of the requisite facts by the exercise of ordinary diligence.

We recognize these principles; and, it being in evidence here that McCartney is a brother-in-law of Robert McKnight, and knowing of this conversation with him some time before, we think he should have instituted some inquiry about this matter, as a correlative of setting up the question of estoppel.  There is no evidence that any inquiry was made or any vigilance shown; there is no evidence that Robert was anywhere about; there is no evidence that William was called on.  [In short, we say that we do not think sufficient facts exist here to raise an estoppel, as against Robert, from asserting his title.] [5]

The defendant contends and asks us, in a point, to instruct you:

1.  That, as against Edward Bell, the defendant here, the doctrine of estoppel arises from the facts in the case.

Answer: What we have said as to Mr. McCartney is applicable to Mr. Bell. No act, intimation or remark about the title was made by Robert to him; and, consequently, we say to you frankly, in answering the gentleman's position, that the evidence in behalf of Edward Bell, the defendant here, is insufficient to raise the doctrine of estoppel.

2. The verdict and judgment in the former suit, trespass quare clausum fregit, Edward Bell v. Robert McKnight, No. 138 June Term 1886, is a bar to the plaintiff's right to recover in the present suit, and the verdict should be for the defendant.

Answer: To this we remark that we recognize the fact that a verdict in an action of trespass, where the plea is liberum tenementum and the same title has been tried, as in the case pending, is admissible as persuasive evidence, but that is not a bar. It is to be considered in connection with another verdict. When two verdicts have been rendered on one side, it is tantamount, in other words, to an action of ejectment, but in this case, where the plaintiff brings his action upon a legal title, we do not think that he is concluded by the verdict in that case as a bar; and therefore we overrule the defendant's point in this behalf.[3]

The jury rendered a verdict for the plaintiff. Judgment having been entered, the defendant took this appeal, assigning for error:

1, 2. The parts of the charge embraced in [ ][1] [2]

3. The answer to the defendant's point.[3]

4. The refusal to admit the defendant's offer as a bar to the action.[4]

5. The part of the charge embraced in [ ][5]

_Mr. Martin Bell, Jr._, for the appellant:

1. The idea that he was sitting as a chancellor, pervaded the entire charge of the learned judge. We submit that this idea was incorrect; that an ejectment suit in which the subject of controversy is whether a parol partition has been made or not, is but an ordinary ejectment, involving simply a legal title, and governed by the rules applicable to such proceedings. This proposition is sustained both by reason and by the weight of the authorities. A parol partition is not an ordinary sale or transfer of land; after it, each of the tenants in common

has as much land as he had before, and the change is in form only and not in substance. The statute of frauds was not passed to meet and remedy any mischiefs arising from parol partitions, and the court should not have held the defendant to the strict measure of proof which would be required to establish a parol sale or gift. We cite on this subject: Ebert v. Wood, 1 Binn. 216; Calhoun v. Hays, 8 W. & S. 132; Rider v. Maul, 46 Pa. 376; Mellon v. Reed, 114 Pa. 649. The only cases which seem to indicate that parol partitions are within the statute, are Gratz v. Gratz, 4 R. 410, and Maul v. Rider, 51 Pa. 377, and the remarks therein to that effect are mere dicta.

2. We contend, however, that the defendant made out a case which, if true, should have satisfied the conscience of a chancellor, and that its truth should have been submitted to the jury. The testimony for the plaintiff, it is true, tended to rebut a part of the defendant's case, but the credibility of the witnesses and the conflict of the evidence were for the jury: Cullmans v. Lindsay, 114 Pa. 171. The court erred, therefore, in deciding, as a matter of law, that the evidence was insufficient to warrant the submission of the case. Again; whether a verdict and judgment in an action of trespass, between the same parties, is conclusive in a subsequent ejectment involving the same question, is left undecided by the cases of Kerr v. Chess, 7 W. 367; Foster v. McDivit, 9 W. 341; Stevens v. Hughes, 31 Pa. 384, and Sabins v. McGhee, 36 Pa. 453. We ask the court to decide now that a verdict in trespass quare clausum fregit, where the question of title was tried, is a bar to a subsequent ejectment between the same parties, on the same title, irrespective of whether the title so tried is a legal or an equitable one, and, as our argument on this point, we cite the opinion of Mr. Justice STRONG in Stevens v. Hughes, supra.

3. If, however, the court should be adverse to deciding this· question, or even if it should be decided against us, we assert that the former verdict and judgment are a bar to the present suit, if the learned judge was right when he undertook to sit and decide this case as a chancellor. One judgment as to title is conclusive when the title passed on is equitable: Winpenny v. Winpenny, 92 Pa. 442. It is conceded that the ques-

Arguments.

tion tried in the trespass suit was identically the same as that involved in the case at bar. If it be objected that the plea of not guilty was on the record of the former action, we reply that said plea was virtually abandoned or withdrawn. Such was the case in Stevens v. Hughes, supra, and the Supreme Court so treated it. A court of equity regards substance, not form; and the former action was in substance a trial of title. If this be an equitable controversy, the former judgment was a bar; if it be a legal controversy, the question was for the jury. Upon the question of estoppel, raised by the fifth specification, we would simply say that from the acts and conduct of William and Robert McKnight, and from Robert's express declarations, the defendant was led and had reason to believe that there had been a parol partition, and to buy the land in good faith, paying a fair price for the whole, not the half.

*Mr. Samuel S. Blair*, for the appellee:

1. It is essential to a parol partition that it should be agreed upon, and that, in pursuance of the agreement, the parties take separate possession of their respective parts. It will not suffice to show merely that the tenants occupied separate portions of the land; they may well do this without affecting their ultimate rights as co-tenants: Johnston v. Goodwin, 27 Vt. 288. The partition must be executed; there must be a division in fact followed by possession: Ebert v. Wood, 1 Binn. 216; Rider v. Maul, 46 Pa. 376; Maul v. Rider, 51 Pa. 377. If partition be not within the statute of frauds, as held in Gratz v. Gratz, 4 R. 410, still the evidence of a parol partition must be as satisfactory as the evidence required in the case of a parol sale: Maul v. Rider, 51 Pa. 377.

2. The necessity of clear proof of the agreement and separate possession, is obvious. At best there is room for inconvenience. Purchasers may have trouble to prove the partition. The uncertainty of proof might be a serious cloud upon the title, which could be removed only by a decree for a conveyance, and that certainly would not be granted on the evidence in this case. The testimony utterly fails to make a case, and the defendant is endeavoring to torture a vague understanding as to how William and Robert intended at some future time to divide the land, into an actual division, which, in fact, never was made.

OPINION, MR. JUSTICE CLARK:

It is admitted that Robert McKnight, Sr., in the year 1860, died seised inter alia of 174 acres of land in Antis township, Blair county, which embraced the lands in dispute, and that by his last will and testament, admitted to probate 8th January, 1861, he devised the same in fee to his six sons, John, William, Blair, Robert, Wilson, and Reuben, equally and in common. On the 16th March, 1875, when the youngest son came of age, an amicable partition of the testator's lands was made among them in writing, by the terms of which Blair, William, and Robert took as their share of the estate the 174 acres of land already mentioned, agreeing to pay, in the nature of owelty, to their brothers Wilson and Reuben, each the sum of $750, and to John $100; the widow's dower in the entire estate, adjusted at $420 annually, to remain a charge, payable in equal parts by all the heirs. On the 23d March, 1875, Blair, William, and Robert, by agreement in writing, subdivided their purpart, Blair taking as his share all that portion of their land lying east of the old township road, containing 96 acres 149 perches, upon which were the buildings, and William and Robert taking the balance of the tract, lying west of the township road, containing 78 acres 148 perches; Blair assuming payment of the $1,500 to Reuben and William, and of the $100 to John, and agreeing, besides, to give to William and Robert $1,000 worth of the timber land off his tract, according to the adjustment of three of their neighbors named. An old lane, running in a westerly direction from the township road, divided the purpart of William and Robert into two nearly equal parts. The 39 acre piece, lying north of the lane, was subsequently taken in execution at the suit of Mary McKnight, by the sheriff of Blair county, as the property of William McKnight, and at the June Term, 1884, was sold, and a sheriff's deed dated 20th June, 1884, was executed and delivered to A. L. McCartney, who on the 15th June, 1885, conveyed to Edward Bell the defendant. The plaintiff, Robert McKnight, conceding Bell's right to the undivided one half of the land, in the right of his brother William, claims to recover the other half.

The defendant's contention, however, is that Robert and William McKnight, who it is conceded were originally tenants in common of the 78 acres, long prior to the sheriff's levy and

Opinion of the Court.

sale, had executed a parol partition thereof between them, by the terms of which Robert became entitled, in severalty and in fee, to the 39 acres south, and William to the 39 acres north of the lane, the latter being the premises in dispute. Whether any such parol partition was in fact executed as alleged, is therefore the principal question in the cause; for, if there was such a partition, the plaintiff has no right of recovery in this case. Upon a full hearing of all the evidence on both sides, the learned judge of the court below gave binding instructions to find for the plaintiff, and this is the first error assigned.

It is now well settled, notwithstanding what was said in Gratz v. Gratz, 4 R. 410, that a parol partition of lands between tenants in common is not a sale or transfer of lands, within the statute of frauds. If tenants in common, intending to make a partition of their lands, run a line, which is marked on the ground as a division line, and actually take possession of their respective parts in pursuance thereof, and the partition is fully excuted between them, it is sufficient to vest the title in severalty. In Rider v. Maul, 46 Pa. 376, the question was upon the effect of an alleged parol partition between Martin Jacobs and John Rider. At the trial of that case below, the court was requested, in the defendant's first point, to charge the jury, in substance, that, if they believed that the parties had run a line, which was marked on the ground as a division line, and had taken possession of their respective parts in pursuance of such division, the partition was executed. The learned judge refused so to charge, saying that the evidence of a parol partition or division was not sufficient to take the case out of the statute of frauds and perjuries, and, further, that the jury should disregard it altogether, and treat Jacobs and Rider as tenants in common. When the case came into this court the judgment was reversed. Mr. Justice THOMPSON, in delivering the opinion of the court, said: "We are of opinion that the defendant's first point should have been answered in the affirmative. It was undoubtedly a correct presentation of the law, as a general proposition: Ebert v. Wood, 1 Binn. 216; Pugh v. Good, 3 W. & S. 56; Calhoun v. Hays, 8 W. & S. 127; and McMahan v. McMahan, 1 Har. 376; and there was testimony of which it was predicated, which, if true, (and this was for the jury,) was sufficient to establish an executed parol division of the land."

When the case came up the second time, 70 Pa. 15, there was, it is true, an intimation that, if the question was res nova, perhaps the court would take a different view, but the former ruling was permitted to stand.   But whatever doubt may have arisen, from what was said in the cases cited, was dispelled by the decision of this court in the very recent case of Mellon v. Reed, 114 Pa. 649, where we said, in the most explicit manner, that "a partition which merely severs the relation existing between tenants in common in the undivided whole, and vests title to a correspondent part in severalty, is not such a sale or transfer of title as will be affected by the statute of frauds." The reason of this rule rests in this: that the partition is not an acquisition or purchase of land, nor is it in any proper sense a transfer of the title to land; it is a mere setting apart in severalty of the same interest held in common, not in other, but in the same lands.   A parol partition, when fair and equal, and followed by due execution, has been held to bind even infants and femes covert; and a judgment or a mortgage or the lien of a legacy against one of the tenants in common will, after the partition, ipso facto cease to bind the whole as an entirety, and attach to his purpart: Williard v. Williard, 56 Pa. 119; Darlington's Appropriation, 13 Pa. 430; Bavington v. Clarke, 2 P. & W. 115; McLanahan v. Wyant, 2 P. & W. 279; Long's App., 77 Pa. 151.   The result of such a partition does not confer a merely equitable right, but a right recognized and which will be enforced at law.   Ejectment would not lie to compel payment of a sum stipulated in the nature of owelty; nor, in the absence of a contract to that effect, would a bill lie to enforce a conveyance: if the parties do not consummate the transaction by writing, it is because they chose to do otherwise.

It follows that the question whether or not a parol partition was actually made and executed, between Robert and William McKnight, was a question of fact to be determined by the jury, as other questions of fact are determinable at law by that tribunal.   There is in all cases, at law, a preliminary question for the court, whether there is any evidence of the fact sought to be established that ought reasonably to satisfy the jury; if there is evidence from which the jury can properly find the question for the party on whom rests the burden of proof, it

should be submitted; if not, it should be withheld from the jury: Hyatt v. Johnston, 91 Pa. 196; Patterson v. Dushane, 115 Pa. 334; Cover v. Manaway, 115 Pa. 338.

As the case was given to the jury with binding instructions to find for the plaintiff, the defendant is entitled to have the testimony he relies upon accepted as true, together with all reasonable inferences therefrom. Referring to the testimony, we are of opinion the case should have been submitted to the jury. We will not recite the testimony, or discuss it, in detail; as the case is to be re-tried, it is better that we should not. A reference in detail to the testimony, to exhibit the ground of this opinion, might be taken at the re-trial, if read in the presence or hearing of the jury, as an expression of our views on the questions of fact involved, and might have a misleading effect. The view we have taken, as to the measure of proof required, will readily suggest the propriety of a submission of these questions to the jury.

The defendant offered in evidence the record of a former action of trespass quare clausum fregit, brought by him against Robert McKnight, 18th June, 1886, in which he claimed and recovered damages for trespasses committed in the cutting of timber on the same land, after the purchase from McCartney. The pleas in that case were "not guilty" and "liberum tenementum." The defendant offered this record, to be followed by proof that the suit was between the same parties and involved the same questions as the present suit, as a bar to the plaintiff's recovery in this ejectment. The record was admitted as persuasive evidence only, and was refused as a bar to the action. This question was raised in Kerr v. Chess, 7 W. 367, and in Foster v. McDivit, 9 W. 341, but it was in neither case decided. In Stevens v. Hughes, 31 Pa. 381, it was held, after a very able and learned discussion of the cases, in an opinion by Mr. Justice Strong, that a judgment upon a traverse of the plea of liberum tenementum, when that is the only plea, is conclusive in a second action of trespass, when the freehold of the same class is attempted to be put in controversy. But in Sabins v. McGhee, 36 Pa. 453, which is a case very similar to the present, it was held that a recovery in an action of trespass quare clausum fregit, where the only plea was liberum tenementum, is not conclusive of the title in a subsequent action of ejectment

Syllabus.

for the same land. The rule of Stevens v. Hughes, supra, was there held to have no application to actions of ejectment. In this case, moreover, the plea of "not guilty" renders the doctrine of Stevens v. Hughes, inapplicable, even if this were trespass.

Apart from the effect of an executed partition, we think there is no ground for an estoppel. The declaration to Allen L. McCartney was made in 1878 or 1879, long before any purchase by him was in contemplation; indeed, the judgment, which was the instrument of sale, was not entered until 1881, and there is not the slightest proof that McCartney purchased the land, relying on Robert's statement that he owned the land on one side, and William the land on the other side of the lane, or that he was in any way thereby misled to his injury. We see no ground for a technical estoppel, but this declaration of Robert, with his other acts and declarations, were, of course, proper for the consideration of the jury.

> The judgment is reversed, and a venire facias de novo awarded.

